THE STATE OF OHIO, APPELLEE, *v.* WIDNER, APPELLANT.

(No. 81-100—Decided December 30, 1981.)

Mr. *John T. Corrigan,* prosecuting attorney, and *Mr. John B. Gibbons,* for appellee.

Ms. *Marillyn F. Damelio,* for appellant.

CELEBREZZE, C. J. The critical issue in this case is whether the original trial judge erred in declaring, *sua sponte,* a mistrial at appellant's first trial, in view of the fact that: (1) both of appellant's defense lawyers had been found in contempt of court and removed from the courtroom; (2) appellant himself expressed a desire to be tried before another judge; (3) appellant, too, had been found in contempt of court and removed from the courtroom; and (4) appellant's co-defendant was ready to go to trial on the merits before the same judge at the time the three foregoing contempt citations were effected.

It is undisputed that jeopardy attached in the case at bar prior to the declaration of a mistrial because, at the time the mistrial was ordered, the jury had already been impaneled and sworn. *Crist* v. *Bretz* (1978), 437 U. S. 28; *Downum* v. *United States* (1963), 372 U. S. 734.

However, under controlling precedent of the United States Supreme Court, the question of whether, under the double jeopardy clause, there can be a second trial, after a mistrial has been declared, *sua sponte,* depends on whether (1) there is a "manifest necessity" or a "high degree" of necessity for ordering a mistrial, or (2) "the ends of public justice would otherwise be defeated." See *Arizona* v.

*Washington* (1978), 434 U. S. 497; *United States* v. *Dinitz* (1976), 424 U. S. 600; *Illinois* v. *Somerville* (1973), 410 U. S. 458. See, also, *United States* v. *Jorn* (1971), 400 U. S. 470. The foregoing concept of "the ends of public justice" has also been more precisely described as "the public's interest in fair trials designed to end in just judgments." *Wade* v. *Hunter* (1949), 336 U. S. 684, 689.

In evaluating whether the trial judge acted properly in declaring a mistrial, the court has been reluctant to formulate precise, inflexible standards. Rather, the court has deferred to the trial court's exercise of discretion in light of all the surrounding circumstances:

" * * * We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is *impossible to define all the circumstances,* which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. * * * But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office." (Emphasis added.) *United States* v. *Perez* (1824), 9 Wheat. 579, 580. See, also, *United States* v. *Clark* (C.A., 2, 1979), 613 F. 2d 391, certiorari denied 449 U. S. 820 (a second prosecution is not barred on double jeopardy grounds when the trial judge had *no reasonable alternative* to ordering a mistrial in the first trial).

Applying these criteria to the particular facts at bar, we conclude that the original trial judge properly exercised his discretion in declaring a mistrial at appellant's first prosecution because, for the reasons that follow, we find (1) a high degree of necessity for ordering the mistrial; (2) the trial judge had no reasonable alternative to declaring a mistrial; and (3) the public interest in fair trials designed to end in just judgments was best served by ordering a mistrial.

Initially, as this court recently and unanimously noted, the public has an interest in the prompt and efficient dispatch of justice. *State* v. *Unger* (1981), 67 Ohio St. 2d 65, 67. If the trial judge had opted, instead, for a continuance of appellant's trial, the trial of the co-defendant, who was ready to proceed on the merits at the time the mistrial was declared, would have been immeasurably delayed, thus thwarting the public's interest in a speedy resolution of the cause.

Secondly, the appellant himself indicated, in open court, that he never wanted to appear before this trial judge. Whether appellant's uncounseled desires are binding on any court, they are of some persuasive value in evaluating the judge's exercise of discretion in declaring the mistrial.

Additionally, from our reading of the record, it appears unlikely that a continuance, of any duration, would have improved the tense atmosphere which existed between defense counsel and appellant, on the one hand, and the trial judge, on the other. Indeed, shortly after declaring the mistrial, this judge successfully arranged for appellant's case to be assigned to another judge. This reassignment had the effect, nonetheless, of eliminating any appearance of potential bias or prejudice in appellant's second trial on the merits. As such, since this shift was in appellant's best interests, this mistrial declaration and transfer were consistent with the goal of the public's interest in fair trials designed to end in just judgments. *Wade* v. *Hunter, supra.*

A final consideration in favor of affirming the Court of Appeals was articulated by the United States Supreme Court in *Arizona* v. *Washington, supra,* at page 505:

"Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes *subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.*" (Emphasis added.)

The case *sub judice* is clearly not one where intentional prosecutorial conduct causes the mistrial. See, *e.g., United States* v. *Enoch* (C.A. 6, 1981), 650 F. 2d 115. We can see no justice in denying the prosecution, on double jeopardy grounds, an opportunity to present its case-in-chief, when the real dispute centers on the impasse concerning appellant, his defense counsel and the trial judge. Our society still retains a genuine interest in making certain that the guilty are punished.

For all the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.