DECISION AND JUDGMENT ENTRY
{¶ 1} This cause is before the court on appeal from the June 8, 2004 judgment of the Ottawa County Court of Common Pleas, wherein appellant, Craig S. Hruby, was convicted of and sentenced on two counts of Gross Sexual Imposition, in violation of R.C.2907.05(A)(4), felonies of the third degree. On appeal, Hruby asserts the following assignments of error:
 {¶ 2} "I. The defendant-appellant was denied due process of the law when the trial court did not hold an admissibility hearing pursuant to the requirements of section 2907.05(e) of the ohio revised code.
 {¶ 3} "II. The trial court committed reversible error when it allowed hearsay evidence to be considered by the jury.
 {¶ 4} "III. The trial court erred in denying defendant-appellant's motion for mistrial in that the prejudice created by the testimonial evidence of the expert witness far outweighed its probative value.
 {¶ 5} "IV. The trial court erred by allowing the jury to consider evidence of prior bad acts as it violated the double jeopardy clauses of the fifth amendment of the united states constitution and article ten [SIC]of the ohio constitution.
 {¶ 6} "V. The trial court erred in imposing an eight year sentence upon defendant-appellant in that it did not comply with the requirements of the ohio revised code sections 2929.11 et seq.
 {¶ 7} "VI. The trial court abused its discretion imposing an eight year sentence upon defendant-appellant as it was against the manifest weight of the evidence."
 {¶ 8} Appellant was indicted on August 11, 2003, on four counts of gross sexual imposition arising from incidents that occurred between himself and his step-daughter between July 4, 1998 and September 29, 1998. Appellant was also indicted in Cuyahoga County on one count of rape and 66 counts of gross sexual imposition involving this same victim. These alleged incidents occurred between January 1992 and December 1996. The Cuyahoga County case was later dismissed after the state lost a Crim.R. 12(K) appeal. See State v. Hruby (Feb. 20, 2003), 8th Dist. No. 81303, 2003-Ohio-746.
 {¶ 9} On February 17, 2004, appellant filed a motion in limine in the Ottawa County Court of Common Pleas requesting the exclusion of defendant's prior bad acts in Cuyahoga County. The state argued the "Cuyahoga acts" were an exception to Evid.R. 404, because the evidence of prior alleged acts would be offered to show "motive, intent, opportunity, preparation, plan, knowledge, identity, or absence of mistake or accident." In a ruling entered on March 23, 2004, the trial court concluded that the other acts evidence would be admissible at appellant's trial. Appellant raised the issue again at the appropriate time during trial, and the trial court ruled in favor of the prosecution.
 {¶ 10} Appellant's trial commenced on March 30, 2004. During the course of trial, the defendant's attorney made a Crim.R. 29 motion to dismiss Count 4 of the indictment. Count Four was dismissed, and the trial continued. Following a trial by jury, appellant was acquitted of Count 1, and found guilty of Counts 2 and 3. After a hearing on May 27, 2004, appellant was sentenced to two four year terms in prison, to be served consecutively.
 {¶ 11} In his first assignment of error, appellant alleges that his due process rights were infringed when the trial court did not hold an admissibility hearing pursuant to the requirements of R.C. 2907.05(E). R.C. 2907.02(E) and 2907.05(E) are identical statutory sections that require a trial court, in either a rape or a gross sexual imposition proceeding, to conduct an in camera hearing prior to taking testimony or receiving evidence of any collateral sexual activities of the defendant. A defendant may, however, waive this statutory right to such a hearing by failing to make a timely request for it. State v.Acre (1983), 6 Ohio St.3d 140, 144.
 {¶ 12} In the present case, appellant failed to make a timely request for an admissibility hearing and thereby waived that statutory right. Id. As a consequence, we can review appellant's claimed error only under the plain error standard. See State v.Perry, 101 Ohio St.3d 118, 2004-Ohio-297, at ¶ 14. Appellant bears the burden of demonstrating that plain error affected his substantial rights. Id. For the following reason, appellant failed to satisfy this burden.
 {¶ 13} In addition to denying appellant's motion in limine, appellant's trial counsel met in the judge's chambers and discussed the need for a "rape shield" hearing. The trial judge stated: "We really should have had a rape shield [sic] hearing in this case. * * * However, considering the record in this case and the hearings that we had both in chambers and in the court on the motions in limine, I think we covered everything, but let me ask you to be sure." Neither party raised an objection to the lack of an R.C. 2907.05(E) hearing.
 {¶ 14} As previously noted, the trial court's ruling on the Cuyahoga acts, i.e., collateral sexual activities, was journalized on March 23, 2004, seven days before trial, and the evidence was found admissible. Therefore, we find that the motionin limine, combined with the hearing in chambers, was an adequate substitute for an R.C. 2907.05(E) hearing. As a result, appellant failed to demonstrate that the lack of an admissibility hearing affected a substantial right. See Crim.R. 52(B). Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 15} In his second assignment of error, appellant argues that the trial court committed reversible error by permitting hearsay evidence at trial. Appellant points to five specific portions of testimony that he claims, when considered together, prejudiced the jury and, as a consequence, denied appellant an opportunity for a fair trial.
 {¶ 16} Out-of-court statements offered to prove the truth of the matter asserted within them are generally inadmissible as hearsay. Evid.R. 801 and 802. If a statement is not offered for the truth of the matter asserted, however, it is not prohibited by the hearsay rule and will be admissible, subject to the standards governing relevancy and undue prejudice. State v.Maurer, 15 Ohio St.3d at 262-263.
 {¶ 17} Appellant's first hearsay allegation involves testimony given by the victim. When asked by the prosecution how she came to Ottawa County from Cuyahoga County, the victim testified:
 {¶ 18} "Q. Do you know how you got to Ottawa County?
 {¶ 19} "A. Yes.
 {¶ 20} "Q. Could you describe how you got there?
 {¶ 21} "A. Well, at the age of six, my mother called me up and asked me if I wanted to come out to Ohio to live with her and I said yes. I went through a year of Court hearings, and my mom finally got custody back from my Aunt Mary, and we moved to Garfield Heights."
 {¶ 22} Since no objection was raised after this testimony, the court's review is limited to plain error. Crim.R. 52(B);Perry, supra. This portion of the testimony was unrelated to the truth of the matter asserted, that is, the issue of the victim's allegations of gross sexual imposition. It was simply offered to show when and how the victim came to live with her mother. Consequently, appellant's first assertion is without merit.
 {¶ 23} Appellant next asserts that the following testimony is hearsay:
 {¶ 24} "Q. What have you told your mom about what happened to you?
 {¶ 25} "A. I told her Craig was wrongly touching me.
 {¶ 26} "Q. Okay.
 {¶ 27} "A. She knows he had me touch him.
 {¶ 28} "Q. Okay. Let me stop you right there. Okay. When you say `He touched me,' what do you mean?
 {¶ 29} "A. He would take his hands and touched my private areas, including my vaginal area.
 {¶ 30} "Mr. Wagner: I am going to object. We don't know where this is happening or even when this is happening. I don't believe it has been established."
 {¶ 31} Appellant argues that this testimony is hearsay because the victim relayed to the court what her mother "knew" about the incident. As shown above, an objection was raised after this line of questioning on the basis of the time frame of the alleged incidents in question and not with regard to what the mother knew or did not know. Therefore, this court's review is limited to plain error. Crim.R. 52(B), Perry, supra.
 {¶ 32} Once again, the victim's testimony in this regard is not hearsay; it is the declarant/victim providing testimony to demonstrate what her mother learned of her stepfather's behavior toward the victim and was not offered for the truth of the matter asserted, specifically, to show what her mother knew. Thus, appellant fails to establish that this testimony affected any of his substantial rights.
 {¶ 33} The following testimony of the victim is also alleged by appellant to be hearsay:
 {¶ 34} "She [victim's mother] had noticed that every time Craig was around, I was getting a little tense.
 {¶ 35} Appellant objected to this testimony on the basis that the victim was testifying as to what her mother noticed. When the statement was made, the victim was at that point in her testimony where she was describing the day that she told her mother that appellant was "molesting" her. The victim characterized herself on that day as having "attitude" because she did not want appellant to accompany her and her mother to the store. According to the victim, her "attitude" caused her mother to confront appellant in order to learn what was going on between her daughter and appellant. Thus, the disputed statement, to wit, her mother "noticed" her daughter's tenseness, was not made to show what her mother noticed. Rather, it was made in the process of explaining an event, the confrontation of appellant and his admission that he was having sexual contact with his stepdaughter. As a result, this statement is not hearsay.
 {¶ 36} Moreover, the victim's mother later confirmed her daughter's testimony through her own testimony. Specifically, when asked about the atmosphere of the house on the day the victim told her mother of the incidents, the mother stated there was "[t]ension. It was just very argumentative." The mother also testified that you could tell that her daughter was angry. Consequently, and assuming that the statement is hearsay, any error arising from the victim's alleged hearsay testimony is harmless error under Civ.R. 52(A). See, also, Perry, at ¶ 15.
 {¶ 37} The remaining two instances of purported hearsay occurred during the defense's own cross-examination of the victim. Hence, any error in admitting this testimony is invited error. State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190, at ¶75. Under the invited error doctrine, a party cannot take advantage of an error that the party invited or induced the court to commit. State v. Bey (1999), 85 Ohio St.3d 487, 492-493. We will not, therefore, address the merits of these last two allegations of inadmissible hearsay testimony. For all of the foregoing reasons, appellant's second assignment of error is found not well-taken.
 {¶ 38} Appellant's third assignment of error asserts that (1) the trial court erred in allowing a discussion of appellant's prior bad acts in Cuyahoga County and, therefore, a mistrial should have been granted; (2) testimonial evidence of an expert witness created prejudice that was far outweighed by its probative value and, therefore, the defense's motion for mistrial should have been granted based on that witness's testimony; and (3) the court erred in allowing the defendant to be labeled as an "opportunist" and, therefore, a mistrial should have been granted.
 {¶ 39} At the outset of our discussion of appellant's third assignment of error, we find that appellant never predicated a motion for a mistrial on the introduction of his prior bad acts into evidence. Therefore, we shall not consider any arguments on appeal that are related to this issue.
 {¶ 40} When determining whether a mistrial is properly decided, the Supreme Court of Ohio "declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise." State v. Glover (1988),35 Ohio St.3d 18, 19, citing State v. Widner (1981), 68 Ohio St.2d 188, 190. Instead, the court "adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his [or her] courtroom warrants the declaration of a mistrial." Id. Our standard of review is abuse of discretion. Id. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St. 3d 217, 219.
 {¶ 41} Appellant maintains that testimony of prosecution's witness, Leslie Witherell, a licensed independent social worker, who practices as a mental therapist, created prejudice which ultimately misled the jury to reach an improper verdict. That portion of the testimony that appellant argues is misleading includes the testimony Witherell offered when asked about the types of evaluations she performs:
 {¶ 42} "A. Often times, I am asked by the Department of Human Services or Child Protection Agencies to re-evaluate or speak again with the alleged victim because, again, the agencies are — often times, they are required to go into someone else's home, for example, or the child is brought into the agency. I can see somebody in a private setting where I can provide for a structured interview, so I am often asked as in this case, to attest to the veracity of —
 {¶ 43} "MR. WAGNER: Objection, your honor.
 {¶ 44} "THE COURT: Sustained.
 {¶ 45} "Q. We won't be talking about your opinion about veracity."
 {¶ 46} At that point, the judge and counsel for appellant and for the state retired to the judge's chambers. While in the judge's chambers, the defense moved for a mistrial, stating the following reasons:
 {¶ 47} "I would like to move for a mistrial based upon the present witness' statement regarding her purpose in talking to the child * * * to determine her veracity. * * * And I don't think it is a very far leap at all or is going to be a very far leap at all to conclude that this woman's opinion of the child's veracity is positive for the jury, that is, and we are moving for a mistrial based on that."
 {¶ 48} The court concluded that the witness did not render any opinion of the victim's veracity, and, therefore, a mistrial was not warranted. The court however did warn the prosecution, "Don't let her go there or there is going to be a bonfire in the middle of the courtroom."
 {¶ 49} The syllabus of State v. Boston (1989),46 Ohio St.3d 108, holds that an expert may not give an opinion regarding the truthfulness or veracity of a child declarant's statements. However, in this case, the defense objected to Witherell's testimony before she could give her opinion as to the victim's veracity and, consequently, no such opinion was given. Therefore, the trial court did not abuse its discretion in denying appellant's first motion for a mistrial.
 {¶ 50} Appellant next finds error with that portion of Witherell's testimony that described the victim as "insightful." Witherell testified:
 {¶ 51} "[The victim] was very insightful. One of the things that impressed me early on with the evaluation was that she had —"
 {¶ 52} At that point, counsel for defendant objected, but did not move for a mistrial, and a short break was taken. In chambers, the court found that the word "insightful" has the same meaning as "truthful." Appellant then made a second motion for a mistrial. The court overruled that motion and set forth parameters for Witherell's testimony.
 {¶ 53} "Insightful" is defined as, "exhibiting or characterized by insight." Merriam Webster's Collegiate Dictionary (10 Ed. 1996) 605. "Insight" means "the power or act of seeing into a situation" or "seeing intuitively." Id. "Truthful," refers to "telling or disposed to tell the truth." Id. at 1269. Since "insightful" and "truthful" are not synonymous, the trial court did err in deciding that the two words had the same meaning, but it did not abuse its discretion in denying appellant's second motion for a mistrial.
 {¶ 54} Appellant also claims that the trial court should have declared a mistrial because Witherell testified that the victim was "believed" as soon as she disclosed appellant's prohibited conduct to her mother. For the following reason, we find that appellant's claim is meritless. Appellant failed to move for a mistrial; thus, appellant can prevail only upon the ground of plain error. There is no plain error in this instance because Witherell was not referring to the victim's veracity. Instead, she was discussing the various types of behaviors exhibited by persons who have been "sexually offended." The fact that the victim in this case was "believed" the first time that she revealed the alleged sexual contact placed her in a specific category.
 {¶ 55} Appellant next argues the prosecution's characterization of the defendant as an "opportunist" was prejudicial to the jury verdict and, therefore, the trial court should have declared a mistrial. Appellant asserts that the use of the word "opportunist" was "synonymous with the improper use of `prior bad acts.'"
 {¶ 56} As previously discussed, evidence of appellant's "prior bad acts" was properly admitted at trial. As to the use of the term "opportunist," Witherell testified that sexual offenders are classified or profiled in particular categories, e.g. rapist, pedophile, opportunist. She defined an opportunist as someone who has the "opportunity" to abuse the victim. Witherell never testified as to which category she believed Hruby belonged. Appellant did not object to this testimony or move for a mistrial. Therefore, error, if any, in the state's use of "opportunist" must be deemed plain error under Crim.R. 52(B).
 {¶ 57} The state employed the term (during opening argument, closing argument, and at sentencing) to describe appellant, who did not work outside the home, as someone who had the opportunity to be around the victim and as one who had the opportunity to seek the sympathy of the jury. In short, the state did not use "opportunist" in order to label appellant as a sexual offender and, when the term is read in context, its use did not affect any of appellant's substantial rights. Accordingly, appellant's third assignment of error is found not well-taken.
 {¶ 58} Appellant claims, in his fourth assignment of error, that the admission of "prior bad acts" testimony at trial violates the Double Jeopardy clauses of the Fifth Amendment to the United States Constitution as well as Article I of the Ohio Constitution.
 {¶ 59} The Ohio Constitution and the United States Constitution read: "No person shall be twice put in jeopardy for the same offense." (Emphasis Added). Fifth Amendment to the United States Constitution; Section 10, Article I, Ohio Constitution.
 {¶ 60} In the instant case, appellant's conviction on two counts of gross sexual imposition were for two acts which occurred in Ottawa County after the family moved from Cuyahoga County. The prosecution stated on numerous occasions that the accused was only being tried for the incidents that occurred in Ottawa County. Simply put, the prosecution in Ottawa County was not for the same offense(s) that allegedly occurred in Cuyahoga County. Accordingly, the Double Jeopardy clauses of the United States Constitution and the Ohio Constitution are not applicable to this cause, and appellant's fourth assignment of error is found not well-taken.
 {¶ 61} Appellant next claims, in his fifth assignment of error, that the trial court erred in its application of sentencing guidelines under R.C. 2929.11 et seq.
 {¶ 62} Appellant contends that the trial court erred by not following the sentencing guidelines imposed by R.C. 2929.11. Appellant also urges that the trial court did not consider any of the "less seriousness factors set forth in R.C. 2929.12(C)."
 {¶ 63} We start with the proposition that the Ohio Rules of Evidence are not applicable to sentencing hearings. See Evid.R. 101(C)(3). A trial court may consider information during the sentencing hearing that may not have been admissible at trial.State v. Guzman, 10th Dist. No. 02AP-1440, 2003-Ohio-4822, at ¶ 25 citing State v. Cassidy (1984), 21 Ohio App.3d 100, 101. "[T]he trial court has wide discretion to consider information, to gather facts concerning the circumstances of the offense and the defendant's character and to determine an appropriate sentence." Guzman at ¶ 25.
 {¶ 64} Under R.C. 2929.12(A), a trial court must balance the seriousness of the defendant's conduct and the likelihood of the defendant to recidivate before imposing sentence. In determining whether a defendant's conduct is more serious than conduct normally associated with the offense, the court must examine the relevant factors set forth in R.C. 2929.12(B).
 {¶ 65} At the sentencing hearing, the following pertinent R.C. 2929.12(B) factors were considered by the trial court to determine whether appellant's conduct was more serious than the conduct normally constituting the offense:
 {¶ 66} "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 {¶ 67} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 {¶ 68} "* * *
 {¶ 69} "(6) The offender's relationship with the victim facilitated the offense.
 {¶ 70} After reviewing the victim's impact statement and the presentence investigation report ("PSI"), the trial court addressed the seriousness of the appellant's offenses by noting:
 {¶ 71} "The more serious indicators are first and foremost, that the victim suffered serious psychological harm as a result of Hruby's actions. She continues, however, to suffer nightmares. She is haunted presently by the vile acts that Mr. Hruby performed upon her * * *"
 {¶ 72} Appellant finds error in the trial court's conclusion that the victim suffered psychological harm because there were no medical expert evaluations or reports offered to substantiate this condition. There is no requirement for specialized experts or reports concerning a victim's psychological harm in order for the court to find serious harm to the victim. State v. Ramirez
(1994), 98 Ohio App.3d 388, 396. Accordingly, the trial court's conclusion that the victim in this case suffered emotional harm after assessing the victim's impact statement and the PSI was proper.
 {¶ 73} Appellant next challenges the trial court's conclusion that, "[t]he offender's relationship with the victim facilitated the offense" and that appellant used this relationship to perpetuate the offense. He also claims that the record of this cause does not support the trial court's statement indicating that appellant influenced his victim to participate in sexual contact by buying her gifts and threatening to physically assault her mother if the victim reported these instances. In addressing this factor, the court below reasoned:
 {¶ 74} "The next serious factor is that the Defendant' relationship with the victim facilitated the offense. He was married to the victim's mother. He was a stay-at-home father, and the opportunity was there and he took full advantage of it. It is also clear that he used his influence over [the victim] to further perpetrate these offenses. * * * The Defendant influenced the victim when she was younger by buying her gifts, and threatened physical assault on the mother if the victim reported these instances."
 {¶ 75} In State v. Tarr, 6th Dist. No. OT-03-010, 2004-Ohio-216 at ¶ 1, this court affirmed an appeal where the appellant challenged the use of his relationship with his daughter as a seriousness factor. In Tarr, we upheld the sentence where the trial court observed "it was the defendant's relationship, the family relationship, which facilitated this offense." Tarr, 2004-Ohio-216, at ¶ 8. In the present case, as in Tarr, the trial court did state it was the relationship to the victim, the fact that Hruby was a stay-at-home father and was married to the victim's mother that made the offense more serious. Further, the fact that appellant bought the victim gifts and threatened to assault her mother was contained in the PSI report, a document properly utilized by the trial court in reaching its decision on sentencing. Therefore, appellant's assertions on these alleged errors are without merit.
 {¶ 76} Appellant also concludes the trial court erred when it used evidence of the Cuyahoga acts at sentencing.
 {¶ 77} At appellant's sentencing hearing, the trial court stated: "We note the multi-count indictment in Cuyahoga County, the charges of rape and gross sexual imposition. Those did not result in convictions, but the Court permitted the jury to consider those for limited purposes during the course of the trial, so I note them here." A court may consider a defendant's unindicted acts or not guilty verdicts in sentencing without resulting in error when they are not the sole basis for the sentence. State v. Williams, 8th Dist. No. 79273, 2002-Ohio-503. Appellant's "prior bad acts" were not the sole basis for the imposition of appellant's sentence; therefore, we find that appellant fails to successfully argue this issue.
 {¶ 78} Appellant next claims the trial court failed to analyze factors that would show his conduct was less serious than conduct normally comprising the offense. R.C. 2929.12(C) provides:
 {¶ 79} "The sentencing court shall consider all of the following that apply regarding the offender, the offense, or thevictim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:
 {¶ 80} "(1) The victim induced or facilitated the offense.
 {¶ 81} "(2) In committing the offense, the offender acted under strong provocation.
 {¶ 82} "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
 {¶ 83} "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." (Emphasis added.)
 {¶ 84} None of these factors were present in this cause. Consequently, the trial court was not required to address them during sentencing. Indeed, the court did indicate that none of statutory factors were present. The judge also opined: "Less serious indicators, the defendant's assertion that he just simply didn't do it. Well, that may be a less serious factor, but it also demonstrates abundantly [sic] lack of remorse."
 {¶ 85} Based on the foregoing, we can find no error in the trial court's compliance with R.C. 2929.12(B) and (C).
 {¶ 86} Appellant next alleges that the trial court improperly determined the question of recidivism at the sentencing hearing. R.C. 2929.12(D) lists the following factors showing that the offender is likely to commit future crimes:
 {¶ 87} "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16,2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141
[2929.14.1] of the Revised Code.
 {¶ 88} "(2) The offender was previously adjudicated a delinquent child * * * or the offender has a history of criminal convictions.
 {¶ 89} "(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 {¶ 90} "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
 {¶ 91} "(5) The offender shows no genuine remorse for the offense."
 {¶ 92} The trial court made the following findings about appellant's likelihood to recidivate:
 {¶ 93} "Those indicators that tell the Court that Mr. Hruby is more, rather than less, likely to commit future offenses, first of all, the history of criminal conduct, which I have already detailed. The second is that Mr. Hruby suffers from a pattern of alcohol abuse, which he does not now acknowledge, nor does he seek treatment for that. And in fact, alcohol was an element at least in some of these instances. * * * Defendant exhibits no genuine remorse for what he has done. He blames it all on his former wife and maintains that he was railroaded by the criminal justice system."
 {¶ 94} Appellant maintains that his criminal record is not lengthy, is somewhat dated, and is, therefore, of limited value today. Hence, he claims the court erred in finding that his prior convictions indicate that he is more likely to commit future crimes. Clearly, prior criminal convictions, including adjudications of delinquency, may be considered by a trial court in determining the likeliness of recidivism. R.C. 2929.12(D),State v. Mendenhall, 11th Dist. No. 2003-A-0116,2005-Ohio-2352, at ¶ 14 and ¶ 15. Further, the statute does not limit consideration of these convictions to a specific number or as to the time that they were committed. Accordingly, the trial court did not err in this regard.
 {¶ 95} Appellant also asserts that his alcoholism was unrelated to the convictions in this case and, therefore, should not be considered as a recidivism factor. In the PSI, however, it clearly states: "The facts deduced at trial indicated that the Defendant had been using alcohol during some of the incidents. It further appears that, from the Defendant's own admission, he has had problems at times in his life with alcohol abuse. With these reports, he still does not believe he is in need of alcohol treatment, and does not necessarily believe he suffers from an alcohol problem."
 {¶ 96} Appellant next argues the court did not consider factors, as set forth in R.C. 2929.12(E), showing appellant is less likely to recidivate. However, the PSI stated, and the trial court agreed, that "In this case, factors indicating that the offender is Not Likely to commit future offenses are not present." We concur with this assessment.[1]
 {¶ 97} Appellant next claims that the length of the sentence imposed, eight years, is extreme as this is appellant's first conviction. He argues that the court should have imposed a sentence of community control or the minimum sentence for a third degree felony. Appellant contends that "his lack of a prior significant criminal activity coupled with the `sexually oriented offender' designation would allow for a less severe sanction, such as community control, without demeaning the seriousness" of his conduct.
 {¶ 98} R.C. 2929.14(B) provides that, absent one of the exceptions enumerated in the statute, a court is required to impose the shortest prison sentence[2] authorized for the offense. One of the exceptions in the statute allows the court to elect to impose a non-minimum sentence on a felony offender if it "finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 99} In State v. Comer (2003), 99 Ohio St.3d 463,2003-Ohio-4165 at paragraph two of the syllabus, the Ohio Supreme Court held that when a trial court imposes a non-minimum sentence on a felony offender the court must make the "statutorily sanctioned findings at the sentencing hearing." The trial court is not required to give specific reasons for its finding pursuant to R.C. 2929.14(B)(2). Id., at 469 n. 2, citing State v.Edmonson (1999), 86 Ohio St.3d 324, 1999-Ohio-110.
 {¶ 100} Here, the sentencing court found: "Defendant is not amenable to community control sanctions. The Court further finds that the shortest term of incarceration would indeed demean the seriousness of the defendant's conduct and would not adequately protect the public from future offenses by the Defendant." Thus, the sentencing court did make the requisite finding on the record at the sentencing hearing to justify non-minimum sentences. What appellant urges is, in essence, that the lower court failed to state the reasons for imposing non-minimum sentence. As noted above, a trial court is not required to state those reasons.
 {¶ 101} All of the contentions raised by appellant on the issue of sentencing are meritless, and appellant's fifth assignment of error is found not well-taken.
 {¶ 102} Appellant's sixth and final assignment of error claims appellant's eight year sentence was "against the manifest weight of the evidence." The reasons supporting appellant's eight year sentence were addressed previously. That sentence is supported by clear and convincing evidence. See State v.Stowell, 6th Dist. No. WD-03-79, 2005-Ohio-1886, at ¶ 25. Consequently, appellant's sixth assignment of error is found not well-taken.
 {¶ 103} On consideration whereof, this court find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs, pursuant to App.R. 24, of this appeal for which sum judgment is rendered against appellant on behalf of Ottawa County and for which execution is awarded. See App.R. 24.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Pietrykowski, J. Singer, P.J. concur.
[1] R.C. 2929.12(E) provides:
"The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:
"(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.
"(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
"(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
"(4) The offense was committed under circumstances not likely to recur.
"(5) The offender shows genuine remorse for the offense."
[2] The minimum sentence for each conviction on a charge of gross sexual imposition, felony of the third degree, is one year. R.C. 2929.12(A)(3).